By the Court :
The relator, Lem P. Harris, Secretary of the Ohio Centennial Commission, created by an act of the legislature passed April 26, 1898 (93 Laws, 269), made a requisition on the Auditor of State for a warrant on the treasury for the sum of $25.00> on account of services rendered by him as secretary for the week ending May 1,1900, to be paid out of an appropriation “For the Ohio Centennial and Northwest Territory Exposition,” made by the legislature shortly before its adjournment, in the sum of $500,000. The claim presented had been approved by James Kilbourne, president of the commission, and the governor of the state. The requisition was refused. The auditor answered, admitting the presentation of the claim and its re *178 jection by him, and further answered: That the Ohio Centennial Commission was appointed by the Governor of Ohio in pursuance of an act of the legislature passed April 26, 1898; that its powers and duties were limited by that act, and that its duties under the act had long since ended prior to May 1, 1900; and that it had no power under that act, or any statute of the state, to draw from the treasury or expend for any purpose any portion of the appropriation, “For the Ohio Centennial and Northwest Territory Exposition,” made by the act passed April 14, 1900, the act in which the above appropriation is made; and that there is not now and was not at the date of the requisition, any fund in the treasury subject to be drawn on by the commission.
To this answer the relator demurred, on the ground that it does not state facts sufficient to constitute a defense.
Whilst it is not claimed that there is any specific statute directly authorizing the appropriation made by the act of April 14, 1900, to be drawn on or expended by the centennial commission, it is argued that it arises as a necessary implication from the act creating the commission, and the previous acts and resolutions of the legislature. And it may be admitted that prior to this act, a clear purpose had been manifested by the state through its legislature, to hold such a centennial; and the time and place had been designated. The act recites what had been done and the importance of the state being fully informed upon the subject, “that the general assembly may act intelligently and effectually in assisting to make the exposition a credit to the state,” and proceed to authorize the governor to appoint a commission of twenty-one persons for the purpose, and defined its *179 powers and duties as follows: “The duties of said commission shall consist in examining and acquainting itself with the grounds upon which it is proposed that said exposition shall be held, and the general plans for their improvement which should receive its approval before the adoption, and shall inspect from time to time such improvements and make such suggestions and recommendations as shall appear desirable or necessary, and in obtaining information as to other expositions of like nature which have heretofore been held or which are now’ being held, and to obtain suggestions from the citizens; of this state as to the nature, extent and character of the exposition which they desire to have held, and to procure plans and propositions pertaining to said exposition and recommendations and suggestions generally that would be of profit in determining what this state should do in forwarding said exposition, including also, invitations to other states, particularly those in the old northwest territory, to participate therein, which invitations shall be approved and endorsed by the governor; and all of which plans, recommendations, suggestions, propositions and information said commission shall report to the next general assembly within ten days from the beginning of its first session. For the purpose of paying the expenses incurred by said commission in the performance of its said duties to the date of its first said report there is hereby appropriated from the general revenue fund of the state from any money not otherwise appropriated, five thousand dollars which shall cover all expenses herein authorized, and the auditor of state shall draw his warrants on the state treasurer in payment of such expenses from time to time on vouchers aforesaid, which warrants shall be paid by said treasurer out of said fund. Pro- *180 Tided however that nothing in this act shall he construed as obligating the state for any appropriation for such centennial exposition, or in any way as expressing the sense of this general assembly, that an appropriation further than the one herein provided, should be made.”
It must readily occur to anyone who reads this act that no executory duties whatever are conferred on thife commission; they are entirely advisory; it is to obtain information, report to the legislature and to advise generally “what this state should do in forwarding said exposition,” and for this purpose $5,000 was appropriated. There is no power here given to contract for any structure, or to purchase or lease any land, for the use of the exposition; or to authorize the expenditure of any money, other than the $5,000, appropriated for the purpose of paying the expenses of the commission incurred in the performance of its duties under the act by which it was created.
But it is said, the legislature intended this appropriation to be used for the purpose of promoting the exposition, or it would not have been made, and it is the duty of the court to make it effective, if that can be reasonably done. The constitution provides that “No money shall be drawn from the treasury, except in pursuance of a specific appropriation, made by law;” but there is no law in this state designating how or by whom this appropriation shall be expended. The appropriation evidently contemplated the adoption of such a law. And we know as a matter of public history, that a bill was introduced in the senate and a somewhat different one in the house, for the purpose of making the appropriation effective. The two houses were unable to .agree, and no legislative action whatever was taken in this regard. From in *181 ability to agree, the matter was abandoned. It is argued that this negative action should be received as evidence that the legislature determined to leave the matter with the commission created in 1898. Conceding such to have been the fact, the objection remains that no new powers were thereby added to that commission; and, as we have shown, the powers conferred on it by statute do not include the power to provide for and conduct the exposition. But is it not more rational to say, that a failure to agree is no evidence that they did agree on the very subject about which they differed, and, to infer, that they concluded to leave the appropriation without any legislation to make it effective, or, that each branch determined, rather than agree with the other, to let the centennial fail so far as any aid from the state is concerned?
The fact is also pointed to, that the commission is required to inspect from time to time the improvements made on the grounds, and make suggestions and recommendations with reference thereto, as favoring the claim that it may use the appropriation in question. But this fact seems more clearly to distinguish it from an executive body. It does not consist with the proper use of language to say that one, who is authorized to inspect or supervise work, is therefore authorized to do the work. It necessarily implies that someone else is to do the work that is to be inspected and supervised. To appoint the body authorized to do the work, to inspect it, would afford no protection to the state or the centennial. State ex rel. Riley v. Oglevee, Auditor, 36 Ohio St., 324, is cited as a precedent. Manifestly it is not in point. There a fund had been duly appropriated by the legislature for the contingent expenses of the two houses; and it was held, that where a fund is provided by law, for the *182 contingent expenses of either branch, the disbursement of the fund for such purposes is subject to the control of such branch.
The result will no doubt be deplored by many of the people of the state who desired that the centennial anniversary of her admission to statehood, should be properly commemorated. But the functions of this court are entirely judicial, not legislative; and it can hardly be expected that it will, by a forced interpretation of the laws, do what the legislature had the power and opportunity to do, but for some unfortunate reason, failed to do, after having had the matter under consideration.

Demurrer overruled and writ refused.